# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| 689 CHARLES RIVER, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action No.<br>) 18-10118-FDS |
| v. | )<br>) |
| AMERICAN ZURICH INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action seeking defense costs and indemnity from an insurance company, arising out of the defective construction of a home. Jurisdiction is based on diversity of citizenship.

Plaintiff 689 Charles River, LLC built a single-family home in Needham, Massachusetts. Charles River sold it to non-party Needham Holdings, LLC, which purchased the property on behalf of Steven J. Sands. The home proved to have multiple construction defects. Sands and Needham Holdings later filed a lawsuit against Charles River in Norfolk Superior Court alleging breach of the implied warranty of habitability, fraud and deceit, fraudulent misrepresentation, negligence, and unfair and deceptive business practices in violation of Mass. Gen. Laws. ch. 93A. (C.A. No. 15-0136). Sands's subrogee, Privilege Underwriters Reciprocal Exchange ("PURE"), later filed a second complaint against Charles River in Suffolk Superior Court, alleging damages arising from the same set of facts. (No. 1684CV00962).

Charles River seeks a declaration from this Court that defendant American Zurich Insurance Company, which issued two insurance policies to Charles River, is obligated to defend and indemnify it in the *Sands* and *PURE* lawsuits under the terms of those policies. Zurich has moved for summary judgment. Because the policies do not provide defense and indemnity coverage for third-party claims such as those alleged in the *Sands* and *PURE* lawsuits against Charles River, the motion will be granted.

**I.      Background**

    **A.      Factual Background[1]**

Zurich issued a Builders' Risk Policy to "689 Charles River Street LLC," with a policy period that ran from July 3, 2013, to July 3, 2014. (Def. SMF Ex. 3 at 3).[2] It provided coverage for damage to new construction occurring at 689 Charles River Street, Needham, Massachusetts, up to $850,000, and included coverage of certain consequential losses, such as debris removal, pollutant clean-up, fire department service charges, and storage of property at a temporary location. (*Id.* at 3, 5).

Under the heading "Coverage," the policy states as follows: "We will pay for direct physical loss or damage to Covered Property from any Covered Cause of Loss described in this

---

[1] Charles River contests the adequacy of Zurich's affidavit that verifies the exhibits to its statement of material facts, complaining that the affidavit cannot have been made from "personal knowledge" because it was signed by an attorney and not a representative of Zurich. In response to the portions of Zurich's statement of material facts that quote from the policies, Charles River states that "the Builders' Risk Policy is a written document which speaks for itself and denies any further characterization of it." Charles River, however, (1) does not provide verified copies of the policies it contends were in force; (2) does not contest that the policies provided by Zurich are in fact the policies at issue; and (3) quotes from those policies in its opposition to the motion for summary judgment. Zurich provided an affidavit verifying these policies from its claims handler on reply, curing any alleged deficiencies. (Grassmuck Aff.). Furthermore, the policies at issue are clearly in the possession of Charles River and it has made no attempt to provide the Court with copies. Under the circumstances, the Court will accept the contested affidavit.

[2] Zurich notes that there is no entity named "689 Charles River Street LLC" registered with the Massachusetts Secretary of State, and assumes for the purposes of this motion that 689 Charles River LLC (the plaintiff in this case and the defendant in the *Sands* and *PURE* suits) is the insured on the Zurich policies.

2

Coverage Form." (Def. SMF Ex. 3 at 14).

The policy defines "Covered Property," in part, as "[p]roperty which has been installed, or is to be installed in any 'commercial structure' or any one to four family dwelling . . . includ[ing]: (a) Your property; (b) Property of others for which you are legally responsible; [and] (c) Paving, curbing, fences and outdoor fixtures." (Def. SMF Ex. 3 at 14). The policy further provides that Zurich "may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property." (Def. SMF Ex. 3 at 9). In the next paragraph, it states that Zurich "may elect to defend you against suits arising from claims of owners of property. We will do this at our expense." (*Id.*).

The policy defines "Covered Cause of Loss" as "risk of direct physical loss or damage to Covered Property, except those causes of loss listed in Section B. EXCLUSIONS." (*Id.* at 14). The exclusions include "loss or damage caused by or resulting from . . . [d]ishonest or criminal acts by you, any of your partners, employees or leased employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose," (*id.* at 19), and "loss or damage caused by or resulting from . . . [f]aulty, inadequate or defective: (1) Planning, zoning, development, surveying, siting; (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance of all or part of any Covered Property wherever located," (*id.* at 20).

Zurich issued a second policy, a Commercial Insurance Policy, to "689 Charles River Street LLC," which was to have a policy period extending from July 3, 2014, through July 3,

3

2015. (Def. SMF Ex. 4 at 35). However, Charles River never paid the premium for that second policy. Presumably, that it is because it sold the house to Sands on July 5, 2014, two days later. (*See* Def. SMF Ex. 5).

The *Sands* lawsuit was filed on October 9, 2015, in Norfolk Superior Court. The second amended complaint seeks damages from Charles River and five individuals for the "spectacularly shoddy and stunningly substandard design and construction" of the house. (Def. SMF Ex. 1 ¶ 1). Among other things, it alleges that the house contained "serious latent defects" caused by "improper design, material, and/or workmanship," which combined to make the house "unfit for human habitation." (*Id.* Ex. 1 ¶ 23). It alleged that the defects did not manifest themselves until February 2015. (*Id.* Ex. 1 ¶ 23). The alleged defects included inadequate or wholly missing insulation, improper air filtration, missing joists and structural beams, improper toilet installation, and sealing so poor as to cause "catastrophic water damage to the interior of the Home from typical regional weather such as snow, rain and ice" and "disastrous growth of mold." (*Id.* Ex. 1 ¶ 23). The second amended complaint asserted five counts for relief: (1) breach of the implied warranty of habitability; (2) fraud and deceit; (3) fraudulent misrepresentation; (4) negligence; and (5) violation of Mass. Gen. Laws ch. 93A. (*Id.* Ex. 1 ¶¶ 42-79).

In December 2015, Charles River submitted a claim to Zurich for defense costs and indemnity for the *Sands* suit, with a reported loss date of February 15, 2015. Zurich denied coverage on January 7, 2016, and again on April 8, 2016. (Def. SMF Exs. 7 & 8).

The *PURE* lawsuit was filed in Suffolk Superior Court on March 22, 2016. It arises from the same operative facts and alleges negligence. (Pl. Opp. Ex. F). It was stayed pending the outcome of the *Sands* action. (Def. SMF Ex. 2). It is not clear from the exhibits whether Charles

4

River also submitted a claim to Zurich for defense costs and indemnity for the *PURE* suit, but the parties appear to agree that it did.

B.  **Procedural Background**

This action was filed on April 18, 2017, in Suffolk County Superior Court. Zurich removed it to federal court on January 22, 2018. The complaint asserts three counts: (1) declaratory judgment that Zurich is obligated under the policies to defend and indemnify Charles River with respect to the *Sands* and *PURE* lawsuits; (2) breach of contract; and (3) violation of Mass. Gen. Laws ch. 93A. Specifically, the breach-of-contract claim alleges that Zurich has breached the insurance policies by failing to defend and indemnify Charles River with respect to the *Sands* and *Pure* lawsuits, and the Chapter 93A claim is based on Zurich's alleged failure to acknowledge its defense and indemnity obligations.

Zurich has moved for summary judgment on all claims.

II.  **Standard of Review**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation mark omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must "view the record in the light most favorable to the nonmovant,

5

drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and footnotes omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III.    Analysis

All three of the claims of Charles River are predicated on the theory that Zurich is obligated to defend and indemnify it in the *Sands* and *PURE* lawsuits. Zurich contends that the policy does not provide such coverage, and therefore its motion for summary judgment should be granted on all counts.

### A.    The Builders' Risk Policy

"The interpretation of insurance contracts is generally a matter of law for the court." *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009). "The court must 'construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter.'" *Id.* (quoting *Jacobs v. U.S. Fid. & Guar. Co.*, 417 Mass. 75, 76 (1994).

There is a distinction in insurance between "first-party policies" and "third-party policies." "First-party policies cover *physical loss or damage to the insured's property*, and protect against 'fortuitous losses,' that is, losses caused by actions outside of the policyholder's control such as the negligent conduct of others. . . . Third-party policies are intended to protect the insured from liability for *damage suffered by third parties*." *Utica Mut. Ins. Co. v. Hall Equip., Inc.*, 73 F. Supp. 2d 83, 92 (D. Mass. 1999); *see also U.S. Liability Ins. Co. v. Bourbeau*, 49 F.3d 786, 790 (1st Cir. 1995); *Atlas Metals Prods. Co. v. Lumbermans Mut. Cas. Co.*, 63

6

Mass. App. Ct. 738, 744-45 (2005); *Rubenstein v. Royal Ins. Co. of Am.*, 44 Mass. App. Ct. 842, 847-48 (1998). Charles River essentially contends that the Builders' Risk Policy is a third-party policy that ought to protect it from liability for damage suffered by Sands.

There are a host of reasons to doubt that the Builders' Risk Policy is such a policy. Most importantly, the plain language of the policy contains no obligation to defend and indemnify. There is no language suggesting that Zurich has any obligation to indemnify Charles River under the policy. The word "indemnity" appears in the policy only on a single page, in a section titled "optional additional coverages," none of which were elected. (Def. SMF Ex. 3 at 5). And the policy contains no obligation to defend. The word "defend" appears in the policy only once: in the section titled "Loss Payment," where it states: "We may elect to defend you against suits arising from claims of owners of property. We will do this at our own expense." (Def. SMF Ex. 3 at 9).[3] But the words "may elect to defend" do not create an obligation to defend, only an option that Zurich—not Charles River—has the right to exercise. Furthermore, the policy explicitly states that it covers "direct physical loss or damage," which generally signals a first-party policy.

Even if the Court were inclined to read the single sentence allowing Zurich to "elect to defend" Charles River against suit from "claims of owners of property" as a general promise to defend Charles River against legal claims from third parties, Zurich would still have no obligation to defend Charles River from the *Sands* and *PURE* lawsuits. "A liability insurer's duty to defend is determined by comparing the allegations in the third-party complaint against

---

[3] The word "defending" appears in the section titled "War and Military Action," in which the policy states that it does not cover loss due to "[w]arlike action by a military force, including action hindering or defending against an actual or expected attack" or "[i]nsurrection, rebellion, revolution, usurped power or action taken by government authority in hindering or defending against any of these." (Def. SMF Ex. 3 at 18).

7

the provisions of the insurance policy." *Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co.*, 465 Mass. 741, 744-45 (2013). "[I]f the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Id.* at 745 (alteration in original) (quoting *Continental Cas. Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984)).

Here, the Builder's Risk Policy expressly excludes coverage of "loss or damage caused by or resulting from . . . [d]ishonest or criminal acts by you, any of your partners, employees or leased employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose," (Def. SMF Ex. 3 at 19), and "loss or damage caused by or resulting from . . . [f]aulty, inadequate or defective: (1) Planning, zoning, development, surveying, siting; (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance of all or part of any Covered Property wherever located," (*id.* at 20).

The *Sands* suit alleges that "serious latent defects"—including inadequate or wholly missing insulation, improper air filtration, missing joists and structural beams, improper toilet installation, and poor sealing—were caused by "improper design, material, and/or workmanship." (*Id.* Ex. 1 ¶ 23). The second amended complaint contained counts for: (1) breach of the implied warranty of habitability; (2) fraud and deceit; (3) fraudulent misrepresentation; (4) negligence; and (5) violation of Mass. Gen. Laws ch. 93A. (*Id.* Ex. 1 ¶¶ 42-79). The *PURE* lawsuit alleges negligence for "[f]ailing to properly insulate the Subject Property" and "[i]mproperly constructing the Subject Property," among other things. (Pl. Opp. Ex. F ¶ 21).

8

Those allegations—of defective workmanship and dishonest acts—are exactly what the policy says it will not cover. The policy is not reasonably susceptible to an interpretation that it covers the allegations of these third-party complaints. Therefore, even if the Builders' Risk Policy could be considered a third-party liability policy—which the Court seriously doubts—Zurich has no obligation to defend or indemnify Charles River from the *Sands* and *PURE* lawsuits.

### B. The Commercial Policy

Zurich contends that the Commercial policy was cancelled as of its effective date because the premium was never paid. (Def. SMF Ex. 5). Charles River complains that it never received notice of the cancellation of the policy for failure to pay a premium. (Pl. Opp. Ex. A). But it does not assert that it *did* pay the premium or put forth any evidence to that effect. Therefore, there is no genuine issue of material fact that the premium was not paid. The policy was therefore void as of its effective date, and Zurich has no obligations under that policy.[4]

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated: September 4, 2018                          United States District Judge

---

[4] The Commercial Policy is equally devoid of any obligation to defend and indemnify against third-party lawsuits. It contains only the same "may elect to defend" clause that the Builders' Risk Policy contains. (Def. SMF Ex. 4 at 46). And it contains the same exclusions for dishonest acts and faulty or defective workmanship. (*Id.* at 40-41).

9